CHAMBERLAIN *v.* CARLISLE *& a.*

A plea of usury, tendering the oath of the defendant, should be signed by him and not by attorney ; and where a defendant pleads usury with a verification by his oath, neither party can, in a subsequent pleading, change the course of the trial by tendering an issue to the jury.

The record of a former judgment between the same parties, for the same cause of action, is, when introduced as evidence, conclusive in bar of a second suit, as fully as though pleaded.

The record of such a judgment, where competent as evidence, binds both parties and privies,—all who have a mutual or successive relationship to the same rights. But it does not bind strangers. It must be strictly between the same parties, or their privies, and upon the same matter in issue. It is also essential to the operation of the rule that both parties shall be alike concluded by the judgment.

A judgment may be used by strangers to the record, by way of inducement ; or to establish a collateral fact ; or to show that the suit has been determined ; or to prove that the judgment was actually rendered at such a time and for such an amount.

ASSUMPSIT, upon a promissory note, signed by the defendants, William T. Carlisle, Royal Joyslin, and John Dewey, dated March 10th, 1844, for $400, payable to Thomas Carlisle or order, in one year, with interest, and by him indorsed to the plaintiff, Edmund Chamberlain. The writ was dated April 4th, 1846.

Chamberlain *v.* Carlisle.

The defendants pleaded jointly, first, the general issue, and secondly, usury. The substance of the second plea was as follows :—

The defendants prayed that the sum of $898.50 might be deducted from the sum lawfully due on the note declared on, because they say that one Thomas Carlisle, on the second day of June, 1834, borrowed of the plaintiff, who is still in full life and of sound mind, the sum of $300, for the term of one year, and it was then and there corruptly agreed between the plaintiff and Thomas Carlisle that the latter should pay $18 as usury for the delay of payment of the sum of $300 for one year; that Carlisle gave his note to the plaintiff on that day for $300, payable in one year, with interest, and procured Royal Joyslin and John Wilson to sign the note as sureties, and on the same day paid to the plaintiff the sum of $18 as usury, for the delay of payment for one year; and delay was accordingly given.

That on the second day of June, 1835, a further corrupt bargain was made between the plaintiff and Thomas Carlisle for the payment of $18 over and above the legal interest, for the delay of payment of said $300 for one year, and that the $18 were paid, and the delay given accordingly.

That on the second day of June, 1836, a further and similar corrupt bargain was made between the same parties for the payment of the same amount over and above the legal interest, for the delay of payment of said $300 for another year, and that the usury was paid and the delay given. And so also on the second day of June, 1837, the same sum of $18 was paid as usury for delay of payment of the principal sum of $300 until the second of June, 1838.

The plea then alleges that on the 10th of June, 1835, Thomas Carlisle hired of the plaintiff the further and another sum of $200, and gave his note therefor, payable to the plaintiff, or order, in one year, with interest, signed by himself and by Sampson and Perkins as his sureties, and that it was corruptly agreed between Thomas Carlisle and

the plaintiff that the former should pay the latter the sum of $12, in addition to the lawful interest upon said $200, for the forbearance and giving day of payment for one year, and that the $12 was on that day accordingly paid.

That on the 10th of June, 1836, and on the 10th of June, 1837, a like agreement was made, and the sum of $12 paid each year as usury for the delay of payment for each year.

The plea then sets forth that on the 10th of June, 1838, Thomas Carlisle gave his note to the plaintiff, signed by himself, and by William T. Carlisle, Royal Joyslin, and John Wilson, as sureties, for the sum of $500, which was given for and embraced the two sums of $300 and $200 before set forth, and on the same day agreed to pay and did pay the plaintiff the sum of $30 in addition to the lawful interest thereon, for the delay of payment for one year, of said sum of $500.

That on the 10th of June, 1839, and on the 10th of June, 1840, a similar corrupt agreement was made, and $30 a year paid as usury, in the same manner as in the preceding year, 1838.

That on the 10th of June, 1841, an agreement was made between the same parties to give day of payment of said $500 till March 10th, 1842; and the sum of $22.50 was paid as usury for the delay.

That on the 10th of March, 1842, $50 of the principal of the note for $500 was paid by Thomas Carlisle, and a new note for $450 given to pay the balance, signed by the same persons, to wit., Thomas Carlisle, William T. Carlisle, Royal Joyslin, and John Wilson; and that a corrupt agreement was then made between Thomas Carlisle and the plaintiff, that the former should pay, and he did then pay to the plaintiff, in addition to the legal interest upon said note of $450, the sum of $27 as usury for the delay of payment of the $450 for one year.

That on the 10th of March, 1843, a further corrupt agreement was made, whereby Thomas Carlisle agreed to pay

and did pay the further sum of $27 as usury for the delay of payment of said $450 for another year, and that the delay was given in the several instances according to the agreement between the parties.

The plea then states that on the 10th day of March, 1844, it was further corruptly agreed between the same parties, that the plaintiff should receive and Thomas Carlisle should pay the sum of $25 as usury for the delay of payment for one year of $375, parcel of the $450; that Thomas Carlisle procured an accommodation note, running to himself, signed by William T. Carlisle, Royal Joyslin and John Dewey, the defendants in this suit, for $400, which embraced the two sums of $375, parcel of the $450, and $25, the usury agreed upon for the delay of payment till the 10th of March, 1845; and that Thomas Carlisle indorsed the said $400 note to the plaintiff, who received it as payment of $375, and applied that sum on the $450 note, and as $25 usury, and that he gave the delay of payment accordingly for the $375 for one year from the 10th day of March, 1844.

" And so the defendants say that for the forbearing and giving day of payment of the moneys aforesaid, in the manner aforesaid, there has been taken and secured by the plaintiff in the manner aforesaid, upon the corrupt and unlawful agreements aforesaid, the sum of $299.50 over and above the lawful interest, at the rate of six pounds in one hundred pounds, for one year, upon the sums so borrowed and forborne as aforesaid, all of which the defendants are ready to verify.

Wherefore the defendants pray that the sum of $898.50, being three times the amount of the unlawful interest so taken and secured as aforesaid, may be deducted from the sum lawfully due on the note declared on in the plaintiff's declaration.

HEYWOOD & BELLOWS,
for the defendants."

To this plea the plaintiff replied that the deduction ought not to be made, " because he says that he has not directly or indirectly taken or received more than after the rate of six per cent. per annum, for forbearance or giving day of payment, as stated in said plea, and that there is not reserved, secured or taken more than after the rate of six per cent. per annum for forbearance or giving day of payment for the money sued for in this action, and of this the plaintiff puts himself on the country."

By his attorney,        H. A. FLETCHER.
And the defendants do the like,

By their attorneys,   HEYWOOD & BELLOWS.

It appeared on the trial that at the same time the present suit was commenced, this plaintiff also commenced another suit in the same county and court, against two of the present defendants, William T. Carlisle and Royal Joyslin, on the $450 note, dated March 10th, 1842, mentioned in the second plea in this suit, which was signed by Thomas Carlisle, William T. Carlisle, Royal Joyslin, and John Wilson. Thomas Carlisle being then dead, and Wilson being out of the State, the suit was not prosecuted against those two. In that suit the defendants therein, William T. Carlisle and Joyslin, appeared and jointly pleaded the general issue with an offset. They also pleaded usury, which was the same usury alleged in the second plea in this suit, down to the 10th of March, 1843. To the plea of usury in that suit, the plaintiff replied, denying the usury alleged, and issues were joined. A trial was had at the May term of the common pleas, 1851, and a verdict being rendered for the plaintiff on the general issue, (the trial being upon the general issue and the plea of usury,) a judgment was thereupon duly had for the plaintiff. And now, at the trial in this suit, the plaintiff offered proper copies of the records in the suit above mentioned, as evidence against the defendants in this suit, in the issue on their second plea of usury, but the same were re-

Chamberlain *v.* Carlisle.

jected by the court. And a verdict being rendered for the defendants on their second plea, the plaintiff moved that the same might be set aside, and that a new trial might be granted on account of alleged error in the court in excluding the evidence., The questions upon the motion were transferred to this court for determination.

*Fletcher*, for the plaintiff.

Dewey was not a party in the other suit, but all the other parties are the same. In that case a verdict was rendered for the plaintiff for $148.66, no deduction being made for the usury. The $400 note was given in part payment of the $450 note, and was deducted. The court will see that this matter has been once passed upon; that the usury has been passed upon, and that the note in suit has been purged of the usury by the verdict in that case. The defendants, Carlisle and Joyslin, have taken their chance of a verdict in that suit, founded upon the same usury alleged in defence of this suit, and it would be most unjust, after having taken a chance of a verdict in their favor, for them to set up the same matter in another suit.

That Dewey was not a party in the former suit makes no difference. It is not indispensable that all the defendants be the same, to bar them from setting up the same matter, and although the books are not rife with examples, still they furnish a precedent. The record of a judgment in an action by A. against B. and C., for obstructing a water course, was produced in evidence in another action by A. against B. and two others, for a similar obstruction. It was contended that another defendant being joined in this action, prevented the record in the former action from being used as evidence. Lord *Ellenborough* said, if the places where the obstruction was laid be proved to be the same, the record of the former case, although it could not be deemed a legal estoppel, so as to conclude the rights of the parties by its production, yet it was binding so far that he should think himself bound

to tell the jury to consider it as conclusive of the rights of. the parties. *Streett* v. *Barrington*, 5 Esp. Rep. 58. See also *Whately* v. *Levy & a.*, 2 Esp. Rep. 608.

The usury in the former case run down to 1843, and not after that, so that it was impossible to have pleaded the record in this case. The usury did not go so far in that case as in this. Again, we could not plead it, because the parties to the record are not the same, and because the whole of the subject matter was not the same. But although it could not be pleaded, it is competent and conclusive as evidence. It may be received as evidence. *King* v. *Chase*, 15 N. H. Rep. 1.

*Bellows* and *Haywood*, for the defendants.

1. The defendants, in their pleadings, having averred usury, and the plaintiff having taken issue upon that fact, instead of replying the former judgment as matter of estoppel or in bar, thereby waived the estoppel, and he could not afterwards offer it in evidence. *Howard* v. *Mitchell*, 14 Mass. Rep. 243; *Adams* v. *Barnes*, 17 Mass. Rep. 368; *Wood* v. *Jackson*, 8 Wend. Rep. 9; 2 Barn. & Ad. 662; 2 Smith's Leading Cases, 444, 445; *Church* v. *Leavenworth*, 4 Day's Rep. 274; 5 Cow. Rep. 550; 6 Rand's Rep. 86, 94; *Pickett* v. *McKay*, 2 Black. Rep. 465; *Edwards* v. *McConnel*, 1 Cooke's Rep. 305; 2 Yerger 467.

If a party relying upon matter in estoppel has no opportunity to plead it, he may give it in evidence. *Whittemore* v. *Shaw*, 8 N. H. Rep. 395; *Dame* v. *Wingate*, 12 N. H. Rep. 295; *King* v. *Chase*, 15 N. H. Rep. 1; *Shelton* v. *Alcox*, 11 Conn. Rep. 240; *Lane* v. *Bigelow*, 8 Vt. Rep. 461; 2 A. K. Marsh. 143; *Keel* v. *Ogden*, 3 Dana's Rep. 103; *Isaacs* v. *Clark*, 12 Vt. Rep. 692; *Brinsmaid* v. *Mayo*, 9 Vt. Rep. 31.

II. The point in issue in this case, the usury, was not determined in the former suit, the jury returning no finding upon that point, and therefore that judgment is not conclu-.

sive in this case. It is only where the point in issue has been determined that the judgment is a bar. 1 Greenl. Ev. § 527; *Church* v. *Leavenworth,* 4 Day's Rep. 432; *Wood* v. *Jackson,* 8 Wendell, 22; *Arnold* v. *Arnold,* 17 Pick. Rep. 9; *Richmond* v. *Hays,* 2 Penn. Rep. 492; *Aiken* v. *Rech,* 22 Vt. Rep. 255; *Eastman* v. *Cooper,* 15 Pick. Rep. 276.

III. The judgment offered in evidence was against different parties of record, and therefore not conclusive against the present defendants. 1 Greenl. Ev. § 528; Bull. Nisi Prius 233; 9 Mass. Rep. 1; *Perkins* v. *Pitts,* 11 Mass. Rep. 125; *Chase* v. *Hathaway,* 14 Mass. Rep. 222; *Shrewsbury* v. *Boylston,* 1 Pick. Rep. 105; *Burrill* v. *West,* 2 N. H. Rep. 192; *Ames* v. *Withington,* 3 N. H. Rep. 115. An estoppel must be reciprocal, and a stranger can neither take advantage of it nor be bound by the estoppel. *Averill* v. *Wilson,* 4 Barb. Sup. Court Rep. 180.

IV. The present action is not brought upon the same cause as the former; and this seems to be required by the books. 1 Greenl. Ev. § 532; *Eastman* v. *Cooper,* 15 Pick. Rep. 276.

The note in the present suit is for $400 instead of $450, as in the former suit, and the interest and usury, if any, from March, 1843, down, is not included, nor was in question in the other note. The usury may be proved between March, 1843, and the time of the bringing of this action, in 1846, a period of time that could not have been considered in the former suit; and if the former judgment is allowed to operate as conclusive evidence, the defendants will be precluded from showing usury at such time, since the question applying to that time could not have arisen.

Once more; the other side may have pleaded the estoppel. It does not follow that because the plea or replication cannot answer the whole pleading, that therefore it might not have been pleaded as a part. We think there cannot be any doubt about it.

EASTMAN, J.   The pleadings in this case were irregular. The plea of usury, tendering the oath of the defendants, should have been signed by them ; and where a defendant pleads usury, under the statute, with a verification by his oath, neither party can, in a subsequent pleading, change the course of the trial by tendering an issue to the jury. *Tappan* v. *Sargent & a.*, 13 N. H. Rep. 429.

But there is no controversy between the parties as to the pleadings.   The only question presented upon the case is, whether the ruling of the court in excluding as evidence the record upon the former suit was correct.

It appears from the case that a former suit was had between this plaintiff and William T. Carlisle and Joyslin, two of the present defendants, upon a note for $450, which was commenced upon the same day with the present suit, was tried at the May term of the common pleas, 1851, and a verdict and judgment therein duly rendered for the plaintiff.   It was the record of that judgment that was offered in evidence in this suit.

From the same plea we gather the following facts, out of which the $450 note and the note now in suit grew.

On the 2d of June, 1834, Thomas Carlisle hired of the plaintiff $300, and gave him his note therefor for that sum, payable in one year, with interest, and procured Royal Joyslin and John Wilson to sign the note with him as sureties; and at the same time made a contract to pay the plaintiff $18 a year as usury.   This note was not taken up till June, 1838, until which time the annual usury was paid according to the contract.

On the 10th of June, 1835, Thomas Carlisle hired of the plaintiff another sum of $200, and procured Sampson & Perkins to sign a note with him therefor to the plaintiff, payable in one year, with interest; and also agreed to pay $12 a year as usury upon this sum.   This note also remained unsatisfied till June, 1838, and the annual usury of $12 was paid by Carlisle upon it.

These two notes were thus brought down to June, 1838, at which time they were taken up, by giving a new note to the plaintiff for $500, dated June 10, 1838, payable in one year, with interest. This note was signed by Thomas Carlisle, and by William T. Carlisle, Royal Joyslin and John Wilson as sureties. At the same time, it was agreed by Thomas Carlisle that $30 a year should be paid as usury upon this note; and that amount was paid up to June, 1841, when an agreement was made to give day of payment till March 10th, 1842, for $27,50 usury, which was also paid.

On the 10th of March, 1842, the $500 note was taken up by the payment of · $50 cash, and the giving a new note for $450, signed by the same persons, Thomas Carlisle, William T. Carlisle, Royal Joyslin and John Wilson; and an agreement was then made between Thomas Carlisle and the plaintiff to pay $27 a year as usury. That sum was paid at the time of giving the note, and also on the 10th of March, 1843, for the delay till March, 1844.

On the 10th of March, 1844, an agreement was made between the plaintiff and Thomas Carlisle to indorse $375 on the $450 note, and to delay payment of the $375 for one year, for the sum of $25 usury; and to secure the $375 and the $25, Thomas Carlisle procured an accommodation-note, running to himself, signed by William T. Carlisle, Royal Joyslin and John Dewey, the defendants in this suit, for $400, and indorsed the same over to the plaintiff.

This $400 note is the one now in suit, and the $450 note is the one upon which the other suit was founded.

In the suit upon the $450 note, which was between this plaintiff and William T. Carlisle and Royal Joyslin, two of the present defendants, two pleas were filed; first, the general issue, and second, usury.

The present suit upon the $400 note is against William T. Carlisle, Royal Joyslin and John Dewey, and the pleas are the same as in the other suit.

. Now it is contended by the plaintiff that the record of the verdict and judgment in the other suit should have been admitted as evidence for the plaintiff, as settling the question upon the plea of usury in this suit; that the defendants, having taken their chance of a verdict on the question of usury in that suit, cannot set up the same matter in this.

But there are two substantial reasons why the ruling of the court in excluding the evidence should be sustained.

In the first place, the issue to be tried here, and upon which the evidence was offered, is upon the question of usury, while the verdict found there, was not upon the plea of usury, but upon the general issue. It is true, the case finds that the trial was upon both issues, but the verdict was rendered upon one only. What disposition was made of the other does not appear: the case only shows that by the record there was no finding upon that issue, and the point in issue now was not settled upon that trial and by that judgment. .

In the next place, this suit is upon a different contract and against different parties. This note was given in March, 1844; that in March, 1842; this for $400; that for $450; and there is manifestly included in this, $25 of usury, which was never included in or made a part of the other.

The $450 note was given directly to the plaintiff, while the one in suit was given to Thomas Carlisle, and by him indorsed to the plaintiff. As between the original parties to the latter, there was certainly no usury in its inception. William T. Carlisle, Joyslin and Dewey gave the note to Thomas Carlisle for his accommodation, and Dewey never signed any of the notes until the one in suit for $400, and for aught that appears, had no connexion with the previous transactions.

It is not necessary to decide whether the record sought to be given in evidence upon the trial, should have been pleaded as an estoppel or not. That may, perhaps, be regarded

as still an open question with us. *Dame* v. *Wingate*, 12 N. H. Rep. 291; *King* v. *Chase*, 15 N. H. Rep. 1.

Neither is it necessary to decide whether, under the circumstances of the case, the parties to the record being different, and the notes upon which the two suits are founded different, the record could have been pleaded. It is unnecessary to decide these questions, because we are of opinion that the record offered was inadmissible in this suit, whether pleaded or not.

It is, however, well settled that, if it was competent, and there was no opportunity to plead it, it might be received under the general issue.

The record of a former judgment between the same parties, for the same cause of action, is, when introduced as evidence, conclusive in bar of a second suit. Notwithstanding there are many very respectable authorities which hold a different doctrine, and maintain that when the record is introduced as evidence the jury are at liberty to find the fact as they may choose, yet the question has been repeatedly decided, and we think correctly, in accordance with the view stated by us. There must, at some time, be an end to litigation upon the same facts; and it has been well remarked that it appears inconsistent that the authority of a *res judicata* should govern the court, when the matter is referred to them by pleading, but that a jury should be at liberty altogether to disregard it when it is referred to them in evidence. 1 Greenl. Ev. § 531; *Cist* v. *Zeigler*, 16 Serg. & Rawle 282, 285; *Shafer* v. *Stonebreaker*, 4 Gill & Johns. 345; *Gardner* v. *Bugbee*, 2 Cowen 120; 1 Phil. & Am. on Ev. 512; *Burt* v. *Sternberg*, 4 Cowen 559; *Marsh* v. *Pier*, 4 Rawle 288; *Estill* v. *Taul*, 2 Yerger 467; *Dame* v. *Wingate*, 12 N. H. Rep. 291; *King* v. *Chase*, 15 N. H. Rep. 1.

The record, when competent as evidence, binds both parties and privies, all who have a mutual or successive relationship to the same rights; privies in law, privies in blood, and privies in estate; all who have the right to adduce tes-

timony or cross-examine the witnesses introduced by the other side; all who have a right to defend the suit or to control the proceedings, or appeal from the judgment. But all others are strangers, and the judgment is not conclusive upon them. It is also essential to the operation of the rule that both parties shall be alike concluded by the judgment. *Burrill* v. *West*, 2 N. H. Rep. 190; *Carver* v. *Jackson*, 4 Peters 85; *Wood* v. *Davis*, 7 Cranch 271; *Davis* v. *Wood*, 1 Wheat. 6; *Case* v. *Reeve*, 14 Johns. 81. And many other authorities might also be cited to the same effect.

Again, in order to make the record evidence, it must appear that the matter to be decided is the same as was settled upon the former suit. The points in issue must be the same, and the judgment is conclusive only upon the matter which was directly in issue in the previous action. By the matter in issue is to be understood that upon which the plaintiff proceeds by his action, and which the defendant controverts by his pleadings; that which can properly be traversed in pleading. *King* v. *Chase*, 15 N. H. Rep. 1.

As we give the same effect to the record, when introduced in evidence, that we give to it when pleaded, it follows that it must be strictly between the same parties or their privies, and upon the same matter in issue.

Now although Carlisle and Joyslin are defendants in both suits, yet Dewey was neither party nor privy to the other action. He had no connexion with that contract whatever; and had the judgment been rendered upon the issue of usury, it could not have concluded him from showing the usury in the second note, whatever it may have been. Had he appeared in that suit and claimed the right to control it in any way, or to cross-examine the witnesses of the plaintiff, it would no doubt have been successfully objected to. Or had there been a verdict in that suit, upon the issue of usury, for the defendants, and the defendants in this suit had undertaken to plead it in bar of the present action, the plaintiff would have replied at once and success-

Chamberlain *v.* Carlisle.

fully, that the former suit was upon a different contract and against different parties.

That the judgment in the former suit could not be pleaded in this would seem to be clear. *Eastman* v. *Cooper*, 15 Pick. 276.

In the remarks which we have made, we do not, of course, intend to be understood as holding that judgments between third parties are not at any time admissible. They may be used by strangers to the record by way of inducement; or to establish collateral facts; or to show that the suit has been determined. They are also admissible to prove that the judgment was actually rendered at such a time and for such an amount; and, in proper cases, to show the amount that a principal has been compelled to pay for the default of his agent, or the amount which a surety has been compelled to pay for the principal debtor. *King* v. *Chase*, before cited; 1 Phil. Ev. 332; 1 Greenl. Ev. §§ 527, 538; *Tyler* v. *Ulmer*, 12 Mass. Rep. 166; *Adams* v. *Balch*, 5 Greenl. Rep. 188; 2 Stark. Ev. 190.

*Judgment on the verdict.*