Grafton
No. 84-535

ROLAND E. HOPPS

v.

UTICA MUTUAL INSURANCE CO.

December 31, 1985

*Bruckner Professional Corporation*, of Woodsville (*Gregory M. Sorg* on the brief and orally), for the plaintiff.

*Wiggin & Nourie*, of Manchester (*Richard B. McNamara* on the brief and orally), for the defendant.

SOUTER, J.  The plaintiff seeks to collect the amount of fire coverage under a homeowner's insurance policy. The superior court dismissed the action after applying the doctrine of collateral estoppel to preclude the plaintiff's relitigation of an issue decided against him when he was earlier convicted of arson in burning the insured building. We affirm.

This is the third case in this court dealing with the fire that dam-

aged the present plaintiff's house in 1981, and we refer to reports of the earlier appeals for their statements of the facts. In *State v. Hopps*, 123 N.H. 541, 465 A.2d 1206 (1983) we affirmed the present plaintiff's conviction for arson under RSA 634:1, III(b), in purposely starting a fire. In *Hopps v. State Board of Parole*, 127 N.H. 133, 500 A.2d 355 (1985) we affirmed the trial court's denial of the present plaintiff's request for relief on petition for writ of habeas corpus, collaterally attacking his earlier conviction.

In this action the plaintiff seeks to collect the proceeds of a policy insuring him against the risk of fire damage, and he alleges loss caused by the fire that he was convicted of setting. *See State v. Hopps supra.* The insurance company defended under the policy provision that excluded coverage for loss caused intentionally by the insured. The company moved for summary judgment on the ground that the criminal conviction conclusively established that the defendant had intentionally caused the destructive fire, and that the doctrine of collateral estoppel, *i.e.*, issue preclusion, barred the plaintiff from relitigating in this later civil action the previously controverted facts of his intention and his act. The Superior Court (*Johnson*, J.) applied this doctrine of issue preclusion and dismissed the action, whereupon the plaintiff brought this appeal.

The plaintiff argues that the doctrine of collateral estoppel cannot be applied in a later civil action to preclude a party from relitigating an issue of fact determined against him as a defendant in an earlier criminal prosecution. In the alternative, the plaintiff argues that even if the doctrine of collateral estoppel is generally applicable in these circumstances, it would be inequitable to apply it in the present case.

In advancing his first argument, that criminal judgments have no issue-preclusive effect in later civil actions, the present plaintiff does not, of course, suggest that criminal judgments as such lack preclusive significance. Indeed, as between two criminal actions, the collateral estoppel raised by an earlier acquittal has been held to be constitutionally required. *See Ashe v. Swenson*, 397 U.S. 436, 442–45 (1970); *State v. Hogg*, 118 N.H. 262, 264–67, 385 A.2d 844, 845–47 (1978); *cf. State v. Fielders*, 124 N.H. 310, 313–14, 470 A.2d 897, 898–900 (1983).

The plaintiff rests his argument, rather, on the authority of a line of cases in this jurisdiction extending back to *Caverno v. Jones*, 61 N.H. 623 (1882). That was a civil action for assault in which this court held that a record of the plaintiff's earlier criminal conviction for the assault in question was inadmissible in the absence of a further record that he had pleaded guilty. *Id.* at 624.

The court indicated that there were two grounds for its conclusion. First, it distinguished the case before it from *Green v. Bedell*, 48 N.H. 546, 548 (1869), which held that the record of a guilty plea in a prior criminal case established a judicial confession, admissible in the trial of a later case when offered to prove the fact confessed. Second, and more significantly, it cited *Chamberlain v. Carlisle*, 26 N.H. 540 (1853), for the inadmissibility of the record of the criminal judgment. By considered dicta in *Chamberlain*, the court had spoken approvingly of the doctrine of res judicata, by which an earlier judgment barred a later action between the same parties, or their privies, for the same cause of action. The court had specifically stated that res judicata could apply only when the effect of the earlier judgment had the character of mutuality; that is, only when the earlier judgment could have bound each party to the later action. *Id.* at 552–53.

*Caverno's* citation to *Chamberlain* implicitly indicated that the preclusive effect of an earlier judgment on the later litigation of an issue of fact was governed and limited entirely by the doctrine of res judicata: because the later civil action did not assert the same cause of action as the earlier prosecution, because the parties were different, and because the civil defendant was not himself bound by the prior judgment, the prior judgment was no bar to relitigation of facts already determined. In modern terminology, *Caverno* held that there was no doctrine of collateral estoppel outside the confines of the doctrine of res judicata. It was, however, merely incidental to the holding in *Caverno* that the earlier judgment happened to be criminal rather than civil.

Because *Caverno* simply held that there could be no issue preclusion unless the requirements of res judicata were satisifed, our question now becomes whether the *Caverno* view of issue preclusion is still sound today. It clearly is not.

The first step away from the holding in *Caverno* came with the explicit recognition that an earlier judgment between the same parties can be conclusive on an issue of fact actually litigated in a prior action, even when the later action does not assert the same cause of action. While this concept of issue preclusion, or collateral estoppel, had been understood before *Caverno*, *see Bascom v. Manning*, 52 N.H. 132 (1872); *Burgess v. Burgess*, 47 N.H. 395 (1867), it was not articulated until the decision in *Metcalf v. Gilmore*, 63 N.H. 174, 189 (1884). For its modern form, *see Caouette v. Town of New Ipswich*, 125 N.H. 547, 554, 484 A.2d 1106, 1111–12 (1984); *Bricker v. Crane*, 118 N.H. 249, 253–54, 387 A.2d 321, 323–24 (1978).

The second step came with the recognition that the justification for precluding relitigation of issues does not depend on the identity of parties or on the potential mutuality of the estoppel. The justification rests, rather, on considerations of policy: if the affected party has had a fair opportunity to litigate the issue once before, its relitigation would thwart judicial economy and risk judicial inconsistency. *See State v. Proulx*, 110 N.H. 187, 189, 263 A.2d 673, 675 (1970); *Sanderson v. Balfour*, 109 N.H. 213, 216, 247 A.2d 185, 187 (1968). Accordingly, in *Sanderson* this court dispensed with the requirements of identical parties and mutuality, and held that collateral estoppel can preclude relitigation by a party in a later action of any issue that the party has litigated in a prior action. The preclusive effect of the prior judgment, however, was held to be limited by the requirement that the earlier action have afforded a full and fair opportunity to litigate the issue in question.

■ This history indicates that *Caverno* is inconsistent with the modern concepts of collateral estoppel that are embodied in the State's current law. Given those modern concepts, there is no reason in principle why an earlier criminal judgment should not preclude a party to the criminal prosecution from relitigating an issue of fact in a later civil proceeding, if that party enjoyed a full and fair opportunity to litigate the issue in the first instance. In fact, there is a stronger rationale for applying collateral estoppel against a former criminal defendant than for applying it against a party to a prior civil case, since the criminal defendant has had the benefit of the presumption of innocence and the State's obligation to prove any fact essential to the conviction beyond a reasonable doubt. We, therefore, follow the Restatement (Second) of Judgments § 85(2)(a) (1982) in holding as a general rule that "[a] judgment in favor of the prosecuting authority [in an earlier prosecution] is preclusive in favor of a third person in a [later] civil action . . . [a]gainst the defendant in the criminal prosecution . . . ."

■■ We note that this application of the general rule of collateral estoppel necessarily requires that the issue to which preclusion applies must have been contested and actually litigated in the prior action. *State v. Proulx supra*. Thus a plea of *nolo contendere* in an earlier criminal prosecution will raise no estoppel, since that plea neither controverts nor confesses the facts upon which the conviction must rest. We also emphasize, as this court explained in *Sanderson*, that the overriding requirement of a fair opportunity to litigate the issue provides the possibility of exceptions to the general rule of preclusion. Although we believe that there was a fair opportunity in this case, we refer to the Restatement for equitable considerations

that would influence us in later cases to set limits to estoppel as between criminal and later civil actions. RESTATEMENT (SECOND) OF JUDGMENTS §§ 28, 29 (1982). More specifically, we reserve judgment on the significance of a defendant's choice not to testify in the criminal action, or of a witness's invocation of a privilege against testifying in the earlier trial. In this case we merely note that the plaintiff took the stand at his criminal trial, and that no issue of witness privilege was raised.

Before giving any further consideration to the application of the general rule in this case, it is necessary to speak to the plaintiff's argument that *Rullo v. Rullo*, 121 N.H. 299, 428 A.2d 1245 (1981) and *Mitchell v. Aetna Life and Cas. Ins. Co.*, 121 N.H. 458, 431 A.2d 120 (1981) are inconsistent with today's holding. In *Rullo*, an administrator brought trespass and negligence actions against the decedent's convicted murderer. Although the administrator was not, of course, a party to the earlier murder prosecution, the defendant's insurer argued that the fact necessary for the conviction, that the defendant had acted intentionally, should not be subject to relitigation. This court rejected the argument, stating that in the absence of a plea of guilty, a criminal conviction does not preclude later civil litigation. *Mitchell* simply followed *Rullo*.

While the language of *Rullo* reflected the holding of *Caverno*, the result in *Rullo* was a reflection of the modern concept of collateral estoppel. *Rullo* held, *inter alia*, that the judgment in an earlier criminal action raises no estoppel against someone who was not a party to that action nor represented in it; today we hold that such a judgment can raise an estoppel against someone who was a party to the earlier criminal action. These two holdings are complementary and consistent.

When we turn to consider the application of the collateral estoppel rule in this case, we find the present plaintiff arguing that it would be inequitable to apply the general rule against him, and that one circumstance of his criminal trial justifies an opportunity to litigate again the issue of whether he intentionally set the fire. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 29(8) (1982). He claims that his defense against the criminal charge was prejudiced by the refusal of the present defendant to disclose the results of its investigation of the fire.

In preparation for the criminal trial, the present plaintiff obtained a court order directing the State to produce any fire investigation reports in its possession. The present plaintiff's counsel also specifically asked the present defendant, the insurance company, for a copy of its investigator's report. While the record fails to indicate that the State ever possessed the latter report, the record does indi-

cate that such a report existed and that the company refused to provide it to the present plaintiff. At the criminal trial, the State called the investigator as a witness, and defense counsel cross-examined him.

If the application of collateral estoppel turned on the degree of the insurance company's cooperation in providing the report, the plaintiff's argument would have merit, for the company made no bones about its refusal to provide the report voluntarily. The company's refusal, however, is not dispositive of the issue of whether it would be inequitable to hold the plaintiff to the earlier determination.

Our principal concern must be with whether the present plaintiff had a fair opportunity to litigate the accusation that he purposely set the fire. Even if we assume that access to the company's report was important to his defense, it does not follow from the present defendant's refusal to disclose the report voluntarily that the present plaintiff was denied a fair and adequate opportunity to litigate his position. The present plaintiff had an opportunity under Superior Court Rule 99 to seek to obtain the report as a condition of the investigator's testimony for the State; he likewise could have sought the court's enforcement of a subpoena *duces tecum* directed against the present defendant. As it was, the present plaintiff made a narrower Rule 99 request, and apparently failed to make proper service of a subpoena. He concentrated his discovery efforts in an extended, and ultimately fruitless, correspondence with the defendant. Because he failed to avail himself fully of his opportunities to use compulsory process, he cannot demonstrate that he was denied a fair opportunity to obtain the desired evidence and defend himself.

Even if we were to take a more expansive view of such inequity that would entitle the present plaintiff to relitigate the issue of his arson, he could not prevail. We have examined the report in question, and we cannot find any substantial support for the plaintiff's hopeful arguments that the report would have been significantly helpful to him if he had obtained it. The plaintiff notes, for example, that the report indicates that electric power was supplied to the house between the first and second fires. While this is consistent with the plaintiff's argument that an electrical malfunction caused the second fire, the evidence does not affirmatively indicate that such a malfunction did cause the fire, and it does provide substantial indication that arson was the cause. While the report indicates that the second fire originated at the place in the house where the plaintiff claimed it began, the report is not consistent with the plaintiff's theory of the fire's causation. While the plaintiff seems to think that the report of a laboratory analysis of samples taken from the building was "negative," the report actually stated that one

sample taken from a bedroom at or near the origin of the second fire showed the presence of a fire accelerant.

The plaintiff's final claim of inequity is that he suffered prejudice because the report would have shown that the company terminated a superficial investigation prematurely. Although the report might have provided the opportunity to make such an argument, it is difficult to believe that the argument would have counted for very much, in the light of the significant circumstantial evidence pointing to the defendant's guilt. Nor can we give much weight to counsel's assertion that he was afraid to cross-examine the investigator as vigorously as he would have done if he had had the report. While this, again, may be so, we are inclined to believe that the present plaintiff's interest was served by the shorter cross-examination of the investigator, who was obviously prepared to marshal substantial evidence that the fire resulted from incendiary intent.

In summary, although the company refused to cooperate with the present plaintiff, he was not denied the legal means to seek the report prior to the investigator's testimony and he thus had a fair opportunity to prepare his case. Moreover, we find it extremely unlikely that the failure to obtain the report prejudiced the defense to the criminal action. Consequently it is not inequitable to apply collateral estoppel as the trial court did.

■ Accordingly, the prior judgment in the criminal prosecution required the conclusion that the present plaintiff intentionally set the fire in question, and entitled the present defendant to summary judgment in the civil action.

*Affirmed.*

JOHNSON, J., did not sit; the others concurred.