MARY L. MORRELL *vs.* ALPHONSINE J. LALONDE *et al.*

FRANK MORRELL *vs.* ALPHONSINE J. LALONDE.

MARCH 27, 1923.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

*(1)  Physicians and Surgeons.  Liability to Patient.*

Where defendant a physician with full knowledge of the seriousness and delicacy of the necessary operation undertook to perform it, and for some

reason failed to finish it and although the patient had but a small chance of escaping death defendant by failing to relieve an acute condition and by making a useless and unnecessary incision diminished the chance of the patient's surviving and then neglected the patient, defendant is liable for such damages as the patient proves she has suffered as a consequence of his acts.

(2)   *New Trial. Damages.*

Where the question of damages is so closely connected with and so dependent on the findings of facts in issue and the degree of responsibility of defendant therefor that it is impossible to try the case fairly without presenting the entire case to the jury a new trial should not be granted simply on the question of damages, where plaintiff refused to file a remittitur.

(3)   *Special Verdicts.   Damages.*

The trial court was justified in refusing to instruct the jury upon request of defendant to return a special finding on the amount if any awarded as exemplary damages, as the statute relates to issues of fact and not to the separate assessment of the different elements of damages.

(4)   *Liability Insurance.   Compensatory and Punitive Damages.*

Where an insurance company insured defendant physician against loss for damages on account of bodily injuries, etc., in consequence of any malpractice, etc., in the practice of his profession, the damages insured against include punitive as well as compensatory damages.

TRESPASS ON THE CASE for Negligence and Malpractice. Heard on exceptions of both parties.   All exceptions overruled.

STEARNS, J.   These are two actions for negligence and malpractice, one of which is brought by Mary L. Morrell, hereinafter called the plaintiff, and the other by her husband, against Alphonsine J. Lalonde, a physician and surgeon, hereinafter called the defendant.   In the first mentioned case the U. S. Fidelity & Guaranty Co. is joined as a defendant as insurer of the defendant against loss from legal liability in consequence of any negligence or malpractice. (See *Morrell v. Lalonde,* 44 R. I. 20.)   The cases were tried together and resulted in the case of the wife in a verdict for $13,416, and for the husband in a verdict for $2,333. On petitions by defendants for new trials, the trial justice granted a new trial unless the wife remitted all of the verdict in excess of $8,500, and the husband all in excess of $1,500.

Each plaintiff refused to remit and the cases are here on exceptions of each of the plaintiffs to the granting of new trials and also on the exceptions of defendants.

At the time of the acts complained of, April 1920, the plaintiff, a married woman, fifty-nine years old, lived in Providence. The defendant conducted a private hospital in the neighboring city of Pawtucket. Both parties were of French ancestry. For a number of years defendant, who was plaintiff's family physician, had at various times treated plaintiff for different ailments. For more than three years, prior to April 1920, plaintiff had been suffering from a rupture which finally resulted in strangulated hernia. Defendant had advised plaintiff that an operation was necessary and that any delay was dangerous, but plaintiff failed to take any action until her condition in April became so critical that she was convinced that an operation offered the only chance of saving her life. Defendant, in response to plaintiff's call, visited plaintiff at her home and advised her that an operation was necessary at once. Plaintiff states that defendant agreed to perform the operation and to call for her that night and take her to his hospital; that defendant did not call for her and that on the following day she went unattended to defendant's hospital where defendant later in the day performed an operation upon her. The defendant knew the facts of the case, that the necessary operation was one which required skill, judgment and some courage. He was under no compulsion to act because of an emergency not anticipated by him. In view of his subsequent conduct it is not easy to understand why he undertook to perform the operation. He made an unskillful opening into the abdomen and without attempting to do anything to relieve the obstructed bowel, after removing an accumulation of pus, sewed up the wound, told his patient she was going to die and that he could do nothing more to help her. Plaintiff's husband came to the hospital that evening and later in the evening plaintiff was sent to her home, as she says, by the advice of defendant. Defend-

ant denies this and states that the plaintiff insisted on being carried to her home despite his advice to the contrary. Much stress is laid on the means of transportation secured by the defendant, which was an undertaker's automobile used generally for the transportation of coffins and the removal of bodies of persons deceased. The vehicle was enclosed and contained a removable stretcher. There is some evidence that this vehicle had before this time occasionally been used as an ambulance. Plaintiff knew the owner of the vehicle and defendant says she and her husband were willing to use it in order to save expense. In any view of the facts it was the duty of the surgeon to assert his influence and authority to induce and to require his patient to remain in the hospital and thereby avoid the risk to her life incident to any removal. He failed to discharge this duty to his patient in this respect. He also neglected to call on his patient after the operation, his excuse being that he was too busy in his hospital. He did telephone to the District Nursing Association in Providence and as a result a visiting nurse for a short time for several days went to plaintiff's home and attended to the dressing of the wounds. But in the circumstances this did not relieve the defendant of his duty to look out personally for his patient after the operation. On the third day after the operation, plaintiff was taken from her home to the Rhode Island Hospital, where a second operation was successfully performed and after six weeks' stay in the hospital plaintiff returned to her home.

The substantial questions raised are two, namely, the question of liability and the amount of the damages. The evidence is ample to sustain the finding of liability. Defendant deliberately, with full knowledge of the seriousness and delicacy of the necessary operation undertook to perform the operation. For some reason, either from lack of judgment or perhaps from a realization of his lack of the necessary skill or from a lack of courage defendant failed properly to perform his duty as a surgeon. In this case

it is clear that having begun the operation the surgeon should have finished it. Although the patient had but a small chance of escaping death, defendant by failing to relieve the acute condition of strangulation and by making a useless and unnecessary incision into the abdomen, thereby diminished the chance of his patient's surviving. For this failure and his subsequent neglect defendant is responsible to plaintiff for such damages as she proves she has suffered as a consequence thereof.

In regard to the amounts of the damages awarded in the two cases, we think the damages in each case are excessive. The jury were properly instructed in accordance with plaintiff's request that the plaintiff, the wife, was entitled to recover compensatory damages and in addition, in the discretion of the jury, to punitive damages and that the husband was entitled to compensatory damages. The record does not sustain the claim of the defendants that the jury were instructed that the husband might also be awarded punitive damages.

As, under the provisions of the statutes (Sec. 12, Chap. 298, Gen. Laws), the verdicts may not be set aside as excessive until the prevailing parties have been given an opportunity to remit so much thereof as the court adjudges excessive the question is, what is a fair assessment of damages. This assessment of the amount of the damages according to the statute is now to be made on the judgment of the court.

In the case of the wife, we think the trial justice was correct in his conclusion that a very considerable part of damages in the verdict was given by the jury as punitive damages. At the time of the trial, in January 1922, plaintiff was sixty-one years old. For three years prior to the operation she had suffered from a rupture and during that period her physical condition had steadily grown worse. For three weeks before the operation she had been working outside of her home for $15. a week. Prior to this, for how long a period it does not appear, she had been unable to

work outside of her home on account of sickness. She had five people rooming in her house from whom she received an income of $10. a week. She did all of the housework for them, for herself and her husband. Before she was taken sick she sometimes did dressmaking at night and made as much as $10. a week extra. That she was not able to make this extra money in 1920 is shown by the following question of her counsel and her answer: "176 Q. You said Mr. Goodspeed paid you only $15. a week; why did you say 'only' 'only $15.'? A. Because I couldn't earn more, I wasn't able to earn more at the time. I wasn't strong enough." In 1918 plaintiff for three months was sick with diabetes and was compelled to live on a prescribed diet—about the same time she had an attack of Bright's disease, from which she suffered for two to three months. After the return of plaintiff from the hospital she began, in the fall of the year, to do a large part of the work in her household again. She now suffers some pain at times from the cut made by the defendant and probably will continue to do so indefinitely. She is at present employed as a housekeeper and does all the work, including cooking and washing, for herself, her husband and her employer in a large house. Without going into greater detail it seems to be reasonably clear that plaintiff is not today suffering to any great extent as a consequence of defendant's fault. In this connection it is to be considered that her condition today is in part, at least, due to her own delay in securing relief by an operation and that a part of her suffering and consequent disability is attributable in all fairness to the second operation. On the whole, we think the amounts of the verdicts as cut by the trial justice give to both plaintiffs proper legal compensation and we think there was no error in the action of the trial justice in this respect.

In regard to the request of plaintiffs that new trials if ordered be restricted simply to the question of damages, we think if there are to be new trials, they should be on all (2) the issues, for the reason that the question of damages is

so closely connected with and so dependent on the findings of facts in issue and the degree of responsibility of defendant therefor, that it is impossible to try the cases fairly without presenting the entire cases to the jury.

The numerous other objections of defendants are without merit and require no comment, except in one or two instances.

(3) There was no error in the refusal of the court upon request of defendants to instruct the jury to return a special finding on the amount, if any, awarded by the jury as exemplary or punitive damages. The statute (Chap. 291, Sec. 6, Gen. Laws) provides that the court shall upon request direct the jury to return a special verdict upon any issue submitted to the jury. It further provides that in addition to such special findings "the jury shall in each case return a general verdict, and shall assess such damages, if any, therein as they may deem just." The special verdicts thus provided for have reference to other issues of fact and not to the separate assessment by the jury of the different elements of damages.

(4) The defendant insurance company by the terms of its liability policy agreed to indemnify defendant to the amount stipulated therein "against loss from the liability imposed by law upon the assured for damages on account of bodily injuries or death suffered by any person or persons in consequence of any malpractice, error or mistake of the assured in the practice of his profession." The defendant company was liable to the amount insured to pay any lawful damages which in a case, such as the case at bar, includes punitive as well as compensatory damages.

The exceptions of plaintiffs and defendants are overruled.

The case of *Mary L. Morrell v. Lalonde,* Ex. &c. No. 5719, is remitted to the Superior Court with direction to grant the defendants a new trial unless the plaintiff shall on or before the 6th day of April, 1923, file in said Superior Court her remittitur of all of said verdict in excess of $8,500, and in case of the filing of such remittitur to enter judgment for the plaintiff for the sum of $8,500.

The case of *Frank Morrell v. Lalonde*, Ex. &c. No. 5718, is remitted to the Superior Court with direction to grant the defendant a new trial unless the plaintiff shall on or before the 6th day of April, 1923, file in said Superior Court his remittitur of all of said verdict in excess of $1,500, and in case of the filing of such remittitur to enter judgment for the plaintiff for the sum of $1,500.

*Henry C. Hart, Hoyt W. Lark, Green, Curran and Hart,* for Mary L. Morrell.

*Charles A. Kiernan,* for Frank Morrell.

*William Dike Reed; Huddy, Emerson & Moulton, Leonidas Pouliot, Jr.,* for defendants.