**Mary M. ALLEN, et al.**

v.

**Robert L. SIMMONS, et al.**

**No. 85–542–Appeal.**

Supreme Court of Rhode Island.

Nov. 23, 1987.

Raymond A. LaFazia, Netti C. Vogel, Gunning, LaFazia & Gnys, Inc., Providence, for plaintiffs.

Paul V. Reynolds, Boyer, Reynolds & DeMarco, Providence, for defendants.

## OPINION

KELLEHER, Justice.

There are two issues presented in this controversy, one of which appears to be a question of first impression in this jurisdiction. That issue is whether an insurer is required to indemnify another for the punitive damages assessed against its insured. In order to put this question and a second issue in their proper perspectives, a brief recitation of the pertinent facts is required.

The plaintiffs, Vernon J. and Mary M. Allen, are husband and wife. On June 24, 1980, the wife was operating her automobile along Post Road in the city of Warwick. Her husband was a front-seat passenger in the vehicle. At some point that day an automobile operated by defendant, Robert L. Simmons (Simmons), and owned by his father, Earl, struck the Allen vehicle. A postcollision investigation revealed that Simmons was intoxicated. Both vehicles were insured by Amica Mutual Insurance Company (Amica). In bringing suit, the Allens sought both compensatory and punitive damages. They based their claim for punitive damages on Simmons's intoxication. During litigation, a consent judgment was entered in this dispute awarding Mrs. Allen approximately $14,975 in compensatory damages and her husband $2,444 as his compensatory damages. A third portion of that judgment awarded the wife and the husband each $1,500 in punitive damages. The judgment, insofar as it relates to the compensatory damages, was satisfied. At this juncture, the Allens were given permission to amend their complaint by adding a count in which they sought repayment of the punitive awards directly from Amica. Apparently sometime during the course of the litigation, both the owner and the operator of the Simmons vehicle disappeared and for reasons not evident in this record, the Allens were permitted to join Amica as a defendant to the litigation pursuant to the provisions of G.L. 1956 (1979 Reenactment) § 27-7-2. The insurer responded by filing a motion for summary judgment, which was granted in the fall of 1985. This appeal ensued.

Amica relies on its policy provision that states that the insurer "will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident." The plaintiffs, on the other hand, attempt to buttress their right to recover

by relying on *Morrell v. Lalonde,* 45 R.I. 112, 118, 120 A. 435, 438 (1923), where a medical-malpractice insurance policy indemnified the physician " 'against loss from the liability imposed by law upon the assured for damages on account of bodily injuries or death suffered by any person or persons in consequence of any malpractice, error or mistake of the assured in the practice of his profession.' "

An examination of the briefs filed by all the litigants in the *Morrell* litigation discloses that the insurer for the physician took the position that it was not liable for punitive damages. Supreme Court BRIEFS 1923 No. 10879 pp. 88–96. Some of the contentions made before us by Amica can be found in the brief filed in 1923 by the physician's insurer. However, our predecessors made little reference to the issue now before us, except to say "[T]he jury was properly instructed * * * that the plaintiff, the wife, was entitled to recover compensatory damages and in addition, in the discretion of the jury, to punitive damages." *Morrell,* 45 R.I. at 116, 120 A. at 437. This brief response to the insurer's arguments about its immunity from indemnification for punitive damages serves as no binding precedent when, some sixty-four years later, the issue comes before this court.

Much has been written about the extent of an insurer's liability when confronted with a question of punitive damages. Needless to say, disagreement exists in regard to the route that should be taken. The differing attitudes can be found in Annot., 16 A.L.R.4th 11 (1982). Those courts that have given a negative response to this issue emphasize that coverage would defeat the purpose of punitive damages, which is to punish and to deter others from acting similarly; and allowing coverage serves no useful purpose since, supposedly, the plaintiff had been made whole by the award of compensatory damages. Again, to allow coverage, it has been said, passes on to the other premium payers the punishment intended for the defendant and creates (1) a conflict of interest between the insurer and the insured and (2) a conflict between the rule permitting the jury to consider a defendant's financial standing in fixing the amount of punitive damages and the principle that the insurance coverage would not be revealed to the jury.

Those courts that have permitted recovery express the view that punitive damages, even though awarded, are not really a deterrent, that coverage does not eliminate deterrence in any event because ordinarily the premium payer will pay an additional premium imposed by a carrier who has been required to pay punitive damages. Other courts have found that the policy language is broad enough to cover both compensatory and punitive damages. In determining what our policy should be, a review of what this court has said relative to punitive damages is in order.

Recently, in *Murphy v. United Steelworkers of America,* 507 A.2d 1342, 1346 (R.I. 1986), this court emphasized that punitive damages are not awarded as compensation for the plaintiff but in order to punish the offender and to deter future misconduct. Again, we have also emphasized that one seeking punitive damages is required to produce " 'evidence of such willfulness, recklessness or wickedness, on the part of the party at fault, as amount[s] to criminality, that for the good of society and warning to the individual, ought to be punished.' " *Morin v. Aetna Casualty and Surety Co.,* 478 A.2d 964, 967 (R.I. 1984).

Amica's obligation in this dispute is set forth in simple and direct language that tells the insured and those claiming under the terms of the policy that the insurer will pay for the damages arising from bodily injuries or damages to one's property arising out of an automotive mishap. The damages for which Amica is obligated to respond are set forth in the provisions to which we have just alluded. Punitive or exemplary damages are awarded, not to enrich or reward a plaintiff, but rather to serve as an object lesson both to the wrongdoer and to others who might be tempted to follow in his or her path.

Earlier we acknowledged that other jurisdictions have taken a contrary view to the one that we have expressed in this contro-

versy. However, this court believes that the sounder approach bars the wrongdoer from shifting the punitive damages to the insurer. Today, for many, an automobile is a necessity, not a luxury. The cost of maintaining automobile liability insurance is a matter of great concern—and even a hardship—to many Rhode Islanders who operate on fixed or limited budgets. Common sense demands that the burden of satisfying a punitive-damage award should remain with the wrongdoer and should not be cast upon the blameless shoulders of the other insureds.

Counsel for plaintiffs now argue, as they did in the Superior Court, that if Simmons was not subject to a punitive-damage award, his vehicle should be considered uninsured. Thus they now allege that they are entitled to recover the $3,000 in punitive damages under the uninsured-motorist provisions of their policy. Naturally, Amica takes a contrary view.

The courts that have been confronted with this issue have, as with the liability-coverage question, expressed divergent points of view. 1 Ghiardi and Kircher, *Punitive Damages, Law and Practice*, § 7.16 (1985). The plaintiffs rely on our holding in *Faraj v. Allstate Insurance Co.*, 486 A.2d 582 (R.I. 1984), where we upheld the validity of a family exclusion clause in a policy but went on to say that the injured family member was entitled to seek benefits under the uninsured-motorist portion of the policy.

In *Ziegelmayer v. Allstate Insurance Co.*, 121 R.I. 818, 820, 403 A.2d 653, 655 (1979), we emphasized that the purpose of our uninsured-motorist legislation was to provide the insured with protection equal to that which would have been available to him or her in the event he or she was involved in a mishap with a negligent motorist who was insured for the minimum coverage mandated by G.L. 1956 (1982 Reenactment) § 31–31–7. Earlier, in *Pickering v. American Employers Insurance Co.*, 109 R.I. 143, 152, 282 A.2d 584, 590 (1971), we indicated that the Legislature, in enacting uninsured-motorist legislation, intended to protect an insured against his or her actual loss. Section 27–7–2.1 speaks of protecting the insured persons who are legally entitled to recover damages from the owner or operator of uninsured motor vehicles because of property damage, bodily injury, sickness, or disease, including death, which result therefrom. It is obvious that an insurer affording uninsured-motorist protection is required to insure against compensatory damages only.

Consequently, § 27–7–2.1 does not require an insurer to provide coverage for punitive damages. Parenthetically, it should be noted that in light of what we have said earlier in this controversy about the insurer's obligation to indemnify for punitive damages, the Simmons vehicle was adequately insured under Rhode Island law and could not be considered an uninsured vehicle.

The plaintiffs' appeal is denied and dismissed, and the judgment appealed from is affirmed.

WEISBERGER, J., did not participate.