NORTH ATLANTIC FISHING,
INC. and Herbert Lee

v.

Louis GEREMIA, Trustee, and Arthur
Reposa and Peter Reposa.

C.A. No. 92–227L.

United States District Court,
D. Rhode Island.

May 3, 1993.

Thomas S. Hemmendinger, Providence, RI, for North Atlantic Fishing, Inc. and Herbert Lee.

Thomas H. Quinn, Providence, RI, and William Y. Chaika, Cranston, RI, for Trustee and Reposas.

Louis A. Geremia, Providence, RI, Trustee.

## MEMORANDUM AND ORDER

LAGUEUX, Chief Judge.

This matter is before the Court on appeal from a Decision and Order issued on November 14, 1991 by Judge Votolato of the United States Bankruptcy Court for the District of Rhode Island. Appellants, North Atlantic Fishing, Inc. ("NAF") and its sole shareholder Herbert Lee, challenge the Bankruptcy Court's calculation of the compensatory and punitive damages which were granted in favor of appellees. In contrast, appellees, Louis A. Geremia, trustee in bankruptcy, and debtors Arthur and Peter Reposa, support Judge Votolato's 1991 decision in its entirety.

## BACKGROUND

Almost nine years have passed since the transaction which underlies this dispute actually occurred. The original contact between the parties, which was consummated in early 1984, arose out of their mutual interest in a fishing boat owned by NAF. The Reposas wished to buy the boat while NAF and Lee were interested in selling it. Importantly, on March 22, 1984, while the Reposas were still deciding whether to purchase the vessel, the boat sank at dockside. Much of the lower level, including the engine, incurred damage. After having the boat cleaned and repaired, Lee told the Reposas that water had not gotten into the engine and that the problem was remedied. Thus, despite the earlier sinking, the Reposas decided to purchase the vessel .for $665,000.00. On May 11, 1984, the Reposas paid $14,000.00 in cash, assumed the $270,-000.00 balance owed to Mellon Bank on an existing mortgage on the boat, and granted NAF a $381,000.00 note secured by a second mortgage on the boat as well as equity mortgages on the Reposas' homes and another fishing boat they owned.

Trouble ensued soon after the Reposas began using the vessel. In July 1984, the engine failed. The Reposas took the vessel to Marty's Marine, Inc. ("Marty's") for repair. However, due to faulty workmanship, the engine failed again just one month later. After three months of further repair work by Giles and Ransome, Inc., the boat

was again seaworthy. Unfortunately, this condition did not last long; in July 1985, the ship's propeller caught on a submerged wire and the reverse gear failed. This time the boat was out of commission until late August 1985.

Although this ill-fated vessel was finally in working order, Arthur Reposa, financially unable to withstand all of the previous turmoil, filed a Chapter 11 petition in September 1985. His son Peter filed a similar petition four months later. The two cases were consolidated and then, in August 1986, were converted to Chapter 7.

The Bankruptcy Court and the Chapter 7 trustee soon began their work. In February 1987, the Bankruptcy Court approved a $30,000.00 payment from Marty's liability insurer as a compromise for the damages caused by Marty's faulty repairs. The next month the Bankruptcy Court authorized the Chapter 7 trustee to sell the fishing boat for $425,000.00 and to pay the first secured creditor, Mellon Bank, $314,-485.00 of the proceeds. Rather than turn over the remaining proceeds to NAF and Lee, who had filed a proof of claim in the amount of $423,555.65, the trustee filed an adversary proceeding in May 1987. The Reposas joined the trustee in alleging that Herbert Lee had fraudulently misrepresented the condition of the boat, and that such misrepresentations led to the ship's extended down time.

After a four day trial in December 1989, Judge Votolato determined that Lee had committed fraud by misrepresenting the condition of the boat. *Reposa v. North Atlantic Fishing, Inc. (In re Reposa)*, A.P. No. 87–0021, slip op. at 10 (Bankr.D.R.I. Dec. 29, 1988) (hereinafter *"Votolato 1988"*). He thus decided that Lee and NAF were liable for the Reposas' losses due to the first engine failure, and calculated the actual losses at $22,125.00. *Id.* at 14. Judge Votolato also determined that, by his intentional fraudulent conduct, Lee had endangered the lives of the Reposas and any others who could have been out at sea when the boat's engine failed. *Id.* at 15. The Judge therefore assessed $160,-000.00 in punitive damages. *Id.* The final

result was to decrease NAF's proof of claim to $241,430.65 plus interest. *Id.* at 16.

All parties appealed. In relevant part, the trustee and the Reposas contested the Bankruptcy Court's failure to void NAF's promissory note, the second preferred ship's mortgage, and the additional equity mortgages. They argued, in the alternative, that the punitive damages should have been increased to offset the Reposas' remaining indebtedness to NAF. On the other hand, NAF and Herbert Lee challenged the award of compensatory and punitive damages as unwarranted and excessive. After considering the issues, Judge Pettine affirmed the Bankruptcy Court's finding of fraud. *In re Reposa*, C.A. No. 89–682P & C.A. No. 89–683P, slip op. at 9 (D.R.I. Mar. 11, 1991) (hereinafter *"Pettine Decision"*). However, deciding that the negligent repair work was foreseeable as a matter of law, Judge Pettine determined that Lee and NAF were responsible for damages resulting from both the first and second engine failures. *Id.* at 10. He remanded the case, instructing the Bankruptcy Court to recalculate compensatory damages. *Id.* at 17. Although Judge Pettine did not rule on punitive damages, he invited the Bankruptcy Court to review its punitive damages assessment in light of the new ruling on compensatory damages. *Id.* at 13. On remand the Bankruptcy Court increased the compensatory damages to $89,395.01. *Reposa v. North Atlantic Fishing, Inc. (In re Reposa)*, A.P. No. 87–0021, slip op. at 3, 1991 WL 502482 (Bankr.D.R.I. Nov. 14, 1991) (hereinafter *"Votolato 1991"*). Additionally, Judge Votolato more than doubled the punitive damages award, determining that the punitive damages should offset the Reposas' remaining indebtedness to NAF. *Id.* at 4. Accordingly, the Bankruptcy Court assessed punitive damages of $334,-160.64, an amount equal to NAF's $423,-555.65 proof of claim less the $89,395.01 compensatory damages award. *Id.*

NAF and Lee again appealed, resulting in the present action. This Court has jurisdiction over appeals from final judgments, orders, and decrees of the Bankruptcy Judge for the District of Rhode Island pur-

suant to 28 U.S.C. § 158(a). After reviewing the appeal, the Court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed.Bankr.R. 8013. Appellants now ask this Court to decrease the compensatory damages and eliminate, or at least decrease, the punitive damages awarded to appellees. They also contend that the Court should order the debt owed to them by the Reposas be satisfied with the proceeds remaining from the sale of the boat and foreclosure on the Reposas' houses. In contrast, appellees argue that the Bankruptcy Court's final judgment should be affirmed.

The Court heard arguments and then took this matter under advisement. It is now in order for decision. For the reasons that follow, the Court vacates the Bankruptcy Court Decision and Order, and remands with instructions regarding compensatory and punitive damages.

## DISCUSSION

### I. Standard of Appellate Review of Bankruptcy Court Judgments

In reviewing an appeal from the bankruptcy court, the district court applies the identical standards of review that govern appeals of civil cases to appellate courts generally. *In re LaRoche*, 969 F.2d 1299, 1301 (1st Cir.1992). Accordingly, the Court will review the Bankruptcy Court's legal conclusions *de novo*, *id.*, and will set aside findings of fact only if it determines, after giving due regard to the Bankruptcy Court's opportunity to judge witnesses' credibility, that the findings are "clearly erroneous." Fed.Bankr.R. 8013. Again as in other appellate review contexts, a factual finding is "clearly erroneous" only when it leaves the appellate court "with the definite and firm conviction that a mistake has been committed." *In re Bible Speaks*, 869 F.2d 628, 630 (1st Cir.) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)), *cert. denied, Bible Speaks, Inc. v. Dovydenas*, 493 U.S. 816, 110 S.Ct. 67, 107 L.Ed.2d 34 (1989); *see also In re Gaudet*, 132 Bankr. 670, 673 (D.R.I.1991).

### II. Compensatory Damages

Appellants argue that the Bankruptcy Court misapplied the law in calculating compensatory damages. First, appellants contend that Judge Votolato erroneously relied on the collateral source doctrine, and failed to subtract the sum of money appellees received in a settlement with Marty's. Second, appellants note that the Bankruptcy Court's determination of detention damages ignores a moratorium on mortgage payments which NAF granted the Reposas while the boat was disabled after the second engine failure. The Court addresses each issue in turn.

### A. Settlement With Marty's

As set forth in the Background section, the Bankruptcy Court originally determined that, although liable for the first engine failure, Herbert Lee and NAF were not responsible for the damages caused by Marty's negligent repair work. *Votolato 1988*, slip op. at 10. However, Judge Pettine reversed, deciding as a matter of law that it was foreseeable to Herbert Lee and NAF that the boat's engine would fail and require repairs, and that the repair work might be done negligently. *Pettine Decision*, slip op. at 10. In following Judge Pettine's instructions on remand, the Bankruptcy Court increased the compensatory damages to reflect the amount the Reposas lost from both the first and second engine failures. *Votolato 1991*, slip op. at 2–3. Although Marty's liability insurance carrier paid appellants $30,000.00 in settlement for Marty's negligence, the Bankruptcy Court applied the collateral source rule and refused to subtract the $30,000.00 from the total compensatory damages owed by appellants. *Id.* at 3 n. 3. As explained below, the Court agrees with appellants that the Bankruptcy Court erred in applying the collateral source rule, and that the Uniform Contribution Among Joint Tortfeasors Act (the "Contribution Act"), R.I.Gen.Laws 1956 (1985 Reenactment) ch. 10–6, requires a $30,000.00 reduction in the compensatory damages award.

The Court's reasoning is straightforward. Clearly, the collateral source doctrine is inapplicable here. That doctrine dictates that payments made to an injured party from sources independent of and collateral to the tortfeasor do not diminish the damages recoverable from the tortfeasor, even if the payments cover all or a part of the harm for which the tortfeasor is liable. *Restatement (Second) of Torts* § 920A(2)(1977); *see also Reilly v. United States*, 863 F.2d 149, 161 (1st Cir.1988) ("absent a statutory provision to the contrary, the amount of recovery from one responsible for another person's injury will not be reduced by the amount received from a collateral source by the plaintiff"). Typically, the doctrine applies to such independent sources as insurance policies maintained by plaintiff or an innocent third party, employment wages and benefits, gratuities, social security benefits, and welfare payments. *Restatement (Second) of Torts*, § 920A cmt. c; *see also, e.g., Soucy v. Martin*, 121 R.I. 651, 657, 402 A.2d 1167, 1170 (1979) (collateral source doctrine prohibits reduction of damages by amount of wages plaintiff received from employer during his injury); *Colvin v. Goldenberg*, 108 R.I. 198, 202, 273 A.2d 663, 666 (1971) (social security benefits and money paid to plaintiff from insurance policy funded by his employer not deducted from damages awarded to plaintiff); *Aldcroft v. Fidelity & Cas. Co.*, 106 R.I. 311, 315, 259 A.2d 408, 412 (1969) (applying collateral source rule to both wages and medical expenses paid by plaintiff's employer).

Importantly, however, this rule does not apply to payments made by "a tortfeasor or by a person acting for him" or to "payments made by another who is, or believes he is, subject to the same tort liability" or by that person's insurer. *Restatement (Second) of Torts*, § 920A(1) & cmt. a. Rather, payments or benefits from these latter sources are credited against tort liability. *Id.* at § 920A(1); *see also, id.* at § 885 cmt. e. In this case, Marty's, as the foreseeable intervening actor whose negligence directly caused the injury, was not an independent or collateral source, and

the payment Marty's insurer made to settle the claim against Marty's should be credited against the tort liability.

It is equally clear that the Uniform Contribution Among Tortfeasors Act mandates a $30,000.00 reduction of the compensatory damages award in this case. The Contribution Act defines joint tortfeasors as "two (2) or more persons jointly or severally liable in tort for the same injury to person or property...." R.I.Gen.Laws § 10–6–2. Here, both Marty's and appellants were liable for the losses caused by the second engine failure. Judge Votolato concluded that Marty's negligent repair work was directly responsible for the injury. *Votolato 1988*, slip op. at 10. Judge Pettine agreed. *Pettine Decision*, slip op. at 10. However, Judge Pettine also determined that, because such negligent repair work was a reasonably foreseeable consequence of appellants' misrepresentations, appellants were also liable for the second engine failure. *Id.* at 9–10 (quoting *Lemke v. Chicago, R.I. & P.R. Co.*, 195 F.2d 989, 992 (8th Cir.1952) ("[i]f the original wrong concurs with the intervening cause and both act proximately in producing the injury, both as a rule are proximate causes")); *see also Walsh v. Israel Couture Post, No. 2274 V.F.W.*, 542 A.2d 1094, 1096 (R.I.1988) ("an intervening act of negligence will not insulate an original tortfeasor if it appears that such intervening act is a natural and probable consequence of the initial tortfeasor's act"); *Roberts v. Kettelle*, 116 R.I. 283, 295, 356 A.2d 207, 215 (1976) (first tortfeasor's negligence is a concurring proximate cause if "the intervening act could reasonably have been foreseen as a natural and probable result of the original act of negligence"). Further, because the injury due to the second engine failure cannot be apportioned between the wrongdoers, the tortfeasors are jointly and severally liable. *See Restatement (Second) of Torts*, § 879; *see also McInnis v. A.M.F., Inc.*, 765 F.2d 240, 250 (1st Cir.1985). Therefore, Marty's and appellants were

joint tortfeasors under the Contribution Act.[1]

Importantly, the Contribution Act requires that a release payment made by one joint tortfeasor "reduce[ ] the claim against the other tortfeasors in the amount of the consideration paid for the release...." R.I.Gen.Laws § 10-6-7; *see also Lawrence v. Pokraka*, 606 A.2d 987, 988 (R.I.1992) (in accordance with statute, jury verdict against one joint tortfeasor must be reduced by sums paid through release-and-settlement agreement with joint tortfeasor); *Restatement (Second) of Torts*, § 885(3) & cmt. a. This arrangement preserves the "fundamental doctrine that an injured person is entitled to only one satisfaction of the tort, even though two or more parties contributed to the loss." *Augustine v. Langlais*, 121 R.I. 802, 805, 402 A.2d 1187, 1189 (1979). Further, although some states prohibit contribution to an intentional tortfeasor, the Contribution Act adopted by Rhode Island makes no such distinction between negligent and intentional tortfeasors. *See* R.I.Gen.Laws ch. 10-6; *Testa v. Winquist*, 451 F.Supp. 388, 392 (D.R.I.1978); *Sousa v. Casey*, 111 R.I. 623, 638, 306 A.2d 186, 195 (R.I.1973). Accordingly, the compensatory damages owed to appellees by appellants must be reduced by the $30,000.00 consideration that Marty's, through its insurance carrier, paid appellees in exchange for release from suit.

### B. Detention Damages

■ Appellants also contend that Judge Votolato erred in calculating detention damages, i.e., the loss the Reposas incurred due to an inability to use their boat. In arriving at a figure for detention damages for the first engine failure, Judge Votolato reasoned: (1) Rhode Island law recognizes recovery for loss of use of a vessel, (2) the loss may be measured by actual rental costs of the vessel, and (3) the mortgage payments the Reposas owed NAF and Mellon Bank during the time the boat was out of service constituted a reasonable surrogate for the rental costs. *Votolato 1988*, slip op. at 13–14. Judge Pettine specifically approved this analysis. *Pettine Decision*, slip op. at 11–12. Therefore, on remand, Judge Votolato employed the same approach in determining detention damages resulting from the second engine failure. Concluding that the second engine failure rendered the boat unusable for ninety-nine days and that the Reposas owed NAF and Mellon Bank a combined $339.29 per day in mortgage payments, Judge Votolato calculated the detention damages for the second engine failure to be $33,589.71. *Votolato 1991*, slip op. at 2.

Appellants now argue that Judge Votolato failed to consider that NAF had granted the Reposas a moratorium on mortgage payments due to NAF during the three months the boat was laid up after the second engine failure. In their brief, appellants claim that the compensatory damages should be decreased by $14,850.00, the amount the Reposas were alleviated from paying to NAF during the moratorium. However, the appellees point out that the moratorium was only as to time, and that the $14,850.00 was never eliminated from the debt Lee and NAF claim the Reposas owe NAF. Appellants then explained at oral argument that the $14,850.00 should be offset against the interest the Reposas

---

**1.** Although the Rhode Island Supreme Court, in *Wilson v. Krasnoff*, 560 A.2d 335 (R.I.1989), recently denied contribution to an initial tortfeasor from subsequent tortfeasors, *Wilson* is not controlling here. In that case, Susan Wilson was injured in a fall on Charles Krasnoff's property. *Id.* at 336. She then received allegedly negligent medical treatment from three different doctors. *Id.* Wilson sued Krasnoff and the three doctors. *Id.* All four defendants entered into a settlement agreement, and Krasnoff's insurance carrier paid Wilson the lump sum amount on which the parties had agreed. *Id.* at 338. When Krasnoff sued for contribution from the doctors, the Rhode Island Supreme Court ruled that contribution was not available because Krasnoff and the doctors were not joint tortfeasors under the Contribution Act. *Id.* at 340–41. Importantly, the Court stated that Krasnoff was not responsible for the harm caused by the doctors' negligence, and the doctors were not responsible for the earlier injury caused by the fall in Krasnoff's building. *Id.* at 341. In the present case, however, both appellants and Marty's are legally responsible for the damages the Reposas suffered due to the second engine failure. Thus, as explained above, appellants and Marty's are joint tortfeasors under the Contribution Act.

owe NAF, rather than against the principal. The Court, however, agrees with appellees that Judge Votolato's approach was reasonable under the circumstances.

First, as noted, Judge Pettine has already approved Judge Votolato's use of the mortgage payments as a surrogate for the loss the Reposas suffered due to their boat's down time. *Pettine Decision*, slip op. at 11–12. In accordance with Judge Votolato's analysis, the fact that the mortgage due to NAF was not actually paid at that time does not alter the conclusion that the boat had a rental value of $339.29 a day to the Reposas. Thus, the Court concludes that appellants' argument on this matter lacks merit.

### III. Punitive Damages

Appellants' primary focus on appeal concerns the Bankruptcy Court's imposition of punitive damages. They present a two-pronged challenge. First, they argue that the facts do not support an award of any punitive damages. Alternatively, they contend that, even if some punitive damages are allowable, the Bankruptcy Court awarded a grossly excessive amount based on passion and prejudice. The appellees, on the other hand, defend the Bankruptcy Court's determination, arguing that Judge Votolato employed correct legal standards and arrived at a figure that achieved the goals for which punitive damages were designed. The Court determines that the Bankruptcy Judge utilized an incorrect legal standard for awarding punitive damages, and therefore will remand the issue with instructions regarding the proper legal guidelines for allowing and calculating punitive damages.

### A. Are Punitive Damages Appropriate as a Matter of Law?

█ Determining whether adequate facts exist to support an award of punitive damages is a question of law, *Greater Providence Deposit Corp. v. Jenison*, 485 A.2d 1242, 1244 (1984) (citing *Sherman v. McDermott*, 114 R.I. 107, 108, 329 A.2d 195, 196 (1974)), and must be reviewed *de novo*. Further, contrary to appellees' ar-

gument, Judge Pettine did not affirm the granting of punitive damages in his decision on the first appeal. Instead, Judge Pettine declined to decide the issue, stating, "It would not be appropriate for this Court to rule on the appeal of the punitive damages award...." *Pettine Decision*, slip op. at 13. At this time, however, this Court must address the issue.

█ Rhode Island law recognizes that punitive damages are extraordinary sanctions designed to punish the wrongdoer and to deter the wrongdoer and others from similar extreme conduct. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266–67, 101 S.Ct. 2748, 2759, 69 L.Ed.2d 616 (1981); *Allen v. Simmons*, 533 A.2d 541, 543 (R.I.1987). Therefore, under Rhode Island law, punitive damages are allowable "only upon evidence of such willfulness, recklessness or wickedness, on the part of the party at fault, as amount[s] to criminality, which for the good of society and warning to the individual, ought to be punished." *Morin v. Aetna Cas. & Sur. Co.*, 478 A.2d 964, 967 (R.I.1984) (quoting *Sherman*, 114 R.I. at 109, 329 A.2d at 196). After a thorough analysis of Rhode Island Supreme Court decisions, this Court explained, "In short, under Rhode Island law, a court may only award punitive damages for *intentional* conduct that is *malicious*." *Regan v. Cherry Corp.*, 706 F.Supp. 145, 153 (D.R.I.1989) (emphasis in original); *see also Wilson Auto Enterprises, Inc. v. Mobil Oil Corp.*, 778 F.Supp. 101, 107 (D.R.I. 1991) (requiring intention to cause harm for punitive damages); *Turks Head Realty Trust v. Shearson Lehman Hutton, Inc.*, 736 F.Supp. 422, 430 (D.R.I.1990) (requiring malicious conduct), *aff'd*, 930 F.2d 905 (1st Cir.1991); *Pimental v. Postoian*, 121 R.I. 6, 13, 393 A.2d 1097, 1101–02 (1978) ("The trial justice properly instructed the jury that punitive damages could be awarded, in their discretion, if they found defendant acted with *actual malice* or in such a reckless or wanton manner *as to amount to malice*") (emphasis added). Whether the evidence is direct or circumstantial, the facts must support some finding of actual or implied malice. *Regan*, 706 F.Supp. at

152–53; *Pimental,* 121 R.I. at 13, 393 A.2d at 1101–02.

However, in this case, Judge Votolato failed to apply this standard. Instead, relying on an earlier bankruptcy case, *In re Walker,* 7 B.R. 216, 222 (B.R.I.1980),[2] Judge Votolato explained in his 1988 opinion that punitive damages "are only to be awarded where an act is done intentionally and without just cause." *Votolato 1988,* slip op. at 14. The Bankruptcy Court concluded that as a result of Lee's intentional misrepresentations, Lee had knowingly endangered the lives of the Reposas and their crew, who could have been out at sea when the engine failed. *Id.* at 15. The Bankruptcy Court, therefore, determined that Lee's misrepresentations triggered an award of punitive damages. *Id.* On remand, the Bankruptcy Court relied on its earlier determination that punitive damages were allowable. *Votolato 1991,* slip op. at 4. However, in light of the greater compensatory damages and its new conclusion that Lee and NAF were responsible for the Reposas' financial ruin, Judge Votolato increased the amount of the punitive damages award. *Id.* Although, despite appellants' arguments, the Court does not quarrel with the Bankruptcy Court's factual findings, the Bankruptcy Court has not determined whether these or other facts in the record adequately support a punitive damages award under the correct legal standard. Therefore, the Court will remand the case to the Bankruptcy Court, which has a more intimate knowledge of the facts and was able to hear testimony from witnesses, to determine whether there is any evidence which suggests that Lee acted with malice, actual or implied.

*B.  Determining the Amount of Punitive Damages*

■ Additionally, if the Bankruptcy Court does determine that punitive damages are appropriate as a matter of law, in determining the amount, there are a number of factors it should consider. First, as it previously recognized, the purpose of punitive damages is to deter and to punish. *City of Newport,* 453 U.S. at 266–67, 101 S.Ct. at 2759; *Allen,* 533 A.2d at 543. Although the Bankruptcy Court may consider the injury incurred by plaintiff, Rhode Island law does not require that punitive damages be directly proportional to compensatory damages. Along these lines, Judge Pettine's decision did not require, or even suggest, that the Bankruptcy Court increase punitive damages as a result of the increased compensatory damages. *Pettine Decision,* slip op. at 13. For instance, compensatory damages are sometimes substantial enough to act as a deterrent in cases where punitive damages are otherwise allowable, *see, e.g., Dias v. Vieira,* 572 A.2d 877, 878–79 (R.I.1990), and an increase in compensatory damages could offset a need for punitive damages. Additionally, even though the factfinder may consider the damages suffered by a plaintiff, it is important to remember that punitive damages are not a vehicle for benefiting or compensating the injured party. *City of Newport,* 453 U.S. at 266, 101 S.Ct. at 2759, *Allen,* 533 A.2d at 543; *Jenison,* 485 A.2d at 1244. Further, punitive damages should not be awarded out of passion, *DeLeo v. Anthony A. Nunes, Inc.,* 546 A.2d 1344, 1348 (R.I.1988), *cert. denied,* 489 U.S. 1074, 109 S.Ct. 1522, 103 L.Ed.2d 828 (1989); *Zarrella v. Robinson,* 460 A.2d 415, 418 (R.I.1983), and, thus, in this case in particular, should not be calculated specifically to prevent the Reposas from losing their homes.

■ In determining the amount of punitive damages to award, the tortfeasor's financial status is also relevant. Naturally, the effect that a monetary judgment has on a wrongdoer varies with the wrongdoer's financial means. *See Restatement (Second) of Torts* § 908 cmt. e. It is the law generally throughout this country that the wealth of the wrongdoer must be assessed in determining punitive damages. *See, e.g., Silkwood v. Kerr–McGee Corp.,* 769 F.2d 1451, 1460 (10th Cir.1985), *cert.*

---

**2.** In *Regan,* 706 F.Supp. at 152, this Court specifically analyzed and rejected the Bankruptcy Court's legal conclusion in *In re Walker,* 7 B.R. at 222, that "an award of punitive damages does not require malice or ill will toward the plaintiff."

*denied,* 476 U.S. 1104, 106 S.Ct. 1947, 90 L.Ed.2d 356 (1986); *Kirkbride v. Lisbon Contractors, Inc.,* 521 Pa. 97, 102, 555 A.2d 800, 803 (Pa.1989); *Wangen v. Knudson,* 428 N.W.2d 242, 246 (S.D.1988). The wrongdoer's financial status is a vital consideration in determining the amount of punitive damages under Rhode Island law. *Norel v. Grochowski,* 51 R.I. 376, 377, 155 A. 357, 358 (1931). However, in this State, the wrongdoer has the burden of showing that, in light of his finances, a punitive damages award is excessive. *Jenison,* 485 A.2d at 1245 ("the burden of showing his modest means ... if he wants this matter considered in mitigation of damages"); *Sherman,* 114 R.I. at 110, 329 A.2d at 197 ("on defendant's representation of an inability to pay, the court would reduce the [punitive damages] award accordingly"). Thus, if the Bankruptcy Court concludes that punitive damages are warranted, it should consider the evidence presented by Lee and NAF regarding their finances when arriving at the amount of the award.

### CONCLUSION

Consistent with the foregoing analysis, this Court vacates the Bankruptcy Court's November 14, 1991 Decision and Order. It remands the case to the Bankruptcy Court to determine compensatory and punitive damages, if any, in accordance with the law as set forth herein. Additionally, after determining the amount of damages, the Bankruptcy Court should determine what orders are appropriate to allow Lee and NAF to satisfy any remaining debt the Reposas may owe to them.

It is so Ordered.